IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


CAROL APPLEBEE WILHELM,                     3:10-CV-1455-BR

          Plaintiff,

                                            OPINION AND ORDER
v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


TIM D. WILBORN
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR 97045
(503) 632-1120

          Attorneys for Plaintiff


S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  -  OPINION AND ORDER

DAVID MORADO
Regional Chief Counsel
JORDAN D. GODDARD
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2733

          Attorneys for Defendant


BROWN, Judge.

     Plaintiff Carol Applebee Wilhelm seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which the ALJ denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

     Plaintiff filed her protective application for DIB on July 26, 2006.  Tr. 99-104.[1]  Her application was denied initially and on reconsideration.  Tr. 78-79, 81-85, 87-89.  An Administrative

---

     [1] Citations to the official transcript of record filed by the Commissioner on April 19, 2011, are referred to as "Tr."

Law Judge (ALJ) held a hearing on March 5, 2009.  Tr. 41.  At the hearing, Plaintiff was represented by an attorney.  Tr. 41. Plaintiff, a Medical Expert (ME), and a Vocational Expert (VE) testified at the hearing.  Tr. 41-77.

The ALJ issued an opinion on June 24, 2009, and found Plaintiff was not disabled and, therefore, was not entitled to benefits.  Tr. 14-22.  That decision became the final decision of the Commissioner on August 28, 2008, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-3.

On November 29, 2010, Plaintiff filed a Complaint in this Court challenging the Commissioner's decision.

## BACKGROUND

Plaintiff was fifty-two years old at the time of the hearing before the ALJ.  Tr. 51.  Plaintiff reports education through the eleventh grade and that she did not obtain a GED.  Tr. 51. Plaintiff has performed past relevant work as a self-employed hot dog vendor, production machine operator, in-home care provider, and as a garden-department sales associate.  Tr. 72-73. Plaintiff alleges a disability onset date of January 23, 2005. Tr. 101.

Plaintiff's medical history includes hysterectomy, ovarian cancer, installation of a pacemaker, corrective surgeries on her right foot (bunionectomy, osteotomy), right shoulder surgery,

3   -   OPINION AND ORDER

surgery to repair a herniated lumbar disc, bilateral carpal tunnel release, gallbladder removal, and cholecystectomy. Tr. 225, 228, 247, 324, 444-45, 509.  Plaintiff has been diagnosed with chronic pain in her feet and at all levels of her spine; mild degenerative changes in her spine with small disc bulges at C-4 through C-6, T-5 through T-7, L-2 through L-3, and L-4 through L-5; tarsal tunnel syndrome; syncope; mild sleep disordered breathing; obesity; and chronic sinusitis.  Tr. 232-34, 247, 250, 283, 334, 435, 446-47, 499-502, 522, 526.

Plaintiff alleges she is disabled due to fatigue and pain in her feet, hands, arms, chest, and back, which limit her ability to lift, to walk, to climb stairs, to squat, to bend, to stand, to reach, to sit, to kneel, to complete tasks, to use her hands, and to get along with others.  Tr. 55-63, 145-49.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the medical records, the Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 16-21.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful

4   -  OPINION AND ORDER

activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.

2005).  The court may not substitute its judgment for that of the

Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.

2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential

inquiry to determine whether a claimant is disabled within the

meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.

2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially

dispositive.

In Step One, the claimant is not disabled if the Commis-

sioner determines the claimant is engaged in substantial gainful

activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052

(9th Cir. 2006).  *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commis-

sioner determines the claimant does not have any medically severe

impairment or combination of impairments.  *Stout*, 454 F.3d at

1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner

determines the claimant's impairments meet or equal one of a

number of listed impairments that the Commissioner acknowledges

are so severe they preclude substantial gainful activity.  *Stout*,

454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iii).  The

6  -  OPINION AND ORDER

criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

7   -  OPINION AND ORDER

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 23, 2005, the alleged onset date of Plaintiff's disability. Tr. 16.

At Step Two, the ALJ found Plaintiff has the severe impairments of obesity, sleep disordered breathing, and vertebrogenic pain with minor deterioration primarily at the thoracic level. Tr. 16.

At Step Three, the ALJ concluded Plaintiff's impairments do not singly or in combination meet or equal a Listed Impairment. *See* 20 C.F.R. part 404, subpart P, appendix 1. The ALJ found

8   -   OPINION AND ORDER

Plaintiff had the RFC to "perform the full range of light work as defined in 20 C.F.R. [§] 404.1567(a).  Tr. 18.

At Step Four, the ALJ concluded Plaintiff is able to perform her past relevant work as a gardening sales associate.  Tr. 21. Thus, the ALJ concluded Plaintiff is not disabled and is not entitled to benefits.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to include Plaintiff's foot impairments as severe impairments at Step Two; (2) improperly rejecting the opinion of Susan S. Jensen, M.D., Plaintiff's treating physician; (3) improperly discrediting Plaintiff's subjective-symptom testimony; (4) improperly discrediting the lay-witness statement of David Applebee, Plaintiff's husband; and (5) failing to include all of Plaintiff's functional limitations in her hypothetical to the VE.

**I.    The ALJ did not err at Step Two.**

Plaintiff contends the ALJ erred at Step Two when she found Plaintiff's foot impairments are not severe impairments. Specifically, Plaintiff contends the pain in her feet limits her to standing for no more than one hour in an eight-hour workday.

The ALJ summarized the medical evidence regarding Plaintiff's foot impairments and determined the record did not establish the existence of any functional limitations resulting

from those impairments.  Tr. 16-17, 20.

A severe impairment "significantly limits" a claimant's
"physical or mental ability to do basic work activities."  20
C.F.R. §§ 404.1521(a), 416.921(a).  *See also Ukolov*, 420 F.3d at
1003.  The ability to do basic work activities is defined as "the
abilities and aptitudes necessary to do most jobs." 20 C.F.R.
§ 404.1521(a),(b).  Such abilities and aptitudes include walking,
standing, sitting, lifting, pushing, pulling, reaching, carrying,
handling, seeing, hearing, speaking; understanding, carrying out,
and remembering simple instructions; using judgment; responding
appropriately to supervision, co-workers, and usual work
situations; and dealing with changes in a routine work setting.
*Id.*  Only acceptable medical sources can establish medically
determinable impairments.  *Ukolov v. Barnhart*, 420 F.3d 1002,
1006 (9th Cir. 2005).  See also 20 C.F.R. §§ 404.1513(a),
416.913(a).

The Step Two threshold is low:

> [A]n impairment can be considered as not
> severe only if it is a slight abnormality
> which has such a minimal effect on the
> individual that it would not be expected to
> interfere with the individual's ability to
> work . . . .  [T]he severity regulation is to
> do no more than allow the Secretary to deny
> benefits summarily to those applicants with
> impairments of a minimal nature which could
> never prevent a person from working.

SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted).
The Ninth Circuit describes Step Two as a "*de minimus* screening

device to dispose of groundless claims." *Smolen*, 80 F.3d at
1290. *See also Webb v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir.
2005). "Great care should be exercised in applying the not
severe impairment concept." SSR 85-28, at *4.

In her brief, Plaintiff summarizes the medicalevidence
reflecting her foot-related diagnoses and the corrective
procedures performed on her right foot. *See generally* Tr. 225-
306. Plaintiff specifically points to the treatment notes of
Terrol Marshall, M.D., in which he notes Plaintiff's statement
that she could only stand for "an hour or so" or "a couple of
hours" due to pain and throbbing in her feet. Tr. 282-83.

The record, however, does not reflect that Dr. Marshall
concluded Plaintiff, in fact, is so limited by her foot
impairments but instead reflects Dr. Marshall merely reported
Plaintiff's stated limitations. For example, on August 15, 2006,
Dr. Marshall noted Plaintiff was seeking disability due to her
foot impairments, and without taking any express position as to
Plaintiff's disability, he pointed out Plaintiff had not been
using her bone stimulator and only that Plaintiff reported her
foot "feels ok[] until she has been up and on it for an hour or
so." Tr. 284. Dr. Marshall did not, however, expressly endorse
such a limitation and instead recommended Plaintiff use her bone
stimulator and wear arch supports. Tr. 284. Moreover, Dr.
Marshall's treatment notes from May 30 and July 25, 2006, reflect

Plaintiff had not had "any pain since the surgery" and that her
foot "gets a little tender after she has been standing and
walking on it for awhile.  She relates that for the most part it
feels ok, but once in awhile it throbbs [sic]."  Tr. 285-87.
Thus, the treatment notes of Dr. Marshall do not reflect any
complaints by Plaintiff of severe pain nor do they establish any
functional limitations resulting from Plaintiff's foot
impairments but merely reflect Plaintiff's complaints of
occasional throbbing, tenderness, and pain after standing and
walking for durations longer than an hour.

     The Court notes, however, the record contains substantial
evidence supporting the ALJ's conclusion that Plaintiff does not
have any functional limitations resulting from her foot
impairments.  In her February 17, 2009, letter to Plaintiff's
counsel in support of Plaintiff's application for disability
benefits, Dr. Jensen, Plaintiff's treating physician of more than
two years, stated Plaintiff's back impairments were the only
cause of her disability and that her "other medical problems that
she has had in the past also at this point do not inhibit her in
any way."  Tr. 519.  In fact, the record does not reflect any
complaints by Plaintiff to Dr. Jensen of ongoing disabling pain
in her feet during their two-year relationship nor does it
reflect Plaintiff continued to receive any treatment for her foot
impairments after her treatment through Dr. Marshall ended in

August 2006 other than an occasional X-ray.  *See* Tr. 445, 448-50, 522-27.  Indeed, Dr. Jensen's references to Plaintiff's foot pain are limited to her review of Plaintiff's "PMH [Past Medical History]."  *See, e.g.,* Tr. 445, 448, 524.

Accordingly, the Court concludes on this record that the ALJ did not err when he found Plaintiff's foot impairments are not severe.

## II.  The ALJ properly discounted Dr. Jensen's opinion.

Plaintiff contends the ALJ erred by failing to give controlling weight to the opinion of Dr. Jensen, Plaintiff's treating physician.  Specifically, Plaintiff points to a letter written by Dr. Jensen to Plaintiff's counsel in which she concludes Plaintiff's neck and back impairments render her incapable of even sedentary work.  Tr. 519.  Plaintiff contends the ALJ did not provide sufficient reasons for rejecting Dr. Jensen's opinion that Plaintiff is disabled, which Plaintiff asserts should, therefore, be credited as true.

### A.  Dr. Jensen.

The record reflects Dr. Jensen was Plaintiff's treating physician from February 2007 through February 2009. Tr. 437-40, 445, 448-48, 519-27.  Dr. Jensen treated Plaintiff for back pain, shoulder pain, stomach pain, insomnia, bronchitis, urinary tract infection, dermatitis of the right eye, and heliobacter pylori. Tr. 437-40, 445, 448-48, 519-27.

13  -  OPINION AND ORDER

As noted, on February 17, 2009, after having treated Plaintiff for two years, Dr. Jensen wrote a letter in response to a request from Plaintiff's counsel to assess Plaintiff's functional capacity. Tr. 519. Dr. Jensen opined in relevant part:

> Carol has suffered from long-standing back pain for approximately 24 years. She is at the point at this time that she is going to have to live with her pain. She has had numerous studies, all of which do not show any surgical problem. However, because of her severe neck pain, thoracic back pain and low back pain the patient is really unable to hold a job. We did discuss her working in a sedentary job and at this point she does not believe that she is going to be able to do this. She states that she can do minimal housework just for several minutes at a time before having severe pain where she needs to sit down or lay down to get the pain relief. She currently has been having difficulty with neck pain and as you know has recently seen a neurosurgeon, but he has stated in his note that she is inoperable at this time.
>
> The patient has always worked in factories and would never be able to do anything of this caliber. I do believe that she would qualify for this disability under the Social Security Act. I do believe that she would not be able to hold even a sedentary job secondary to her pain and inability to function on a regular basis doing light work.
>
> Her ongoing medical problems at this time include multiple joint pain and in particular again cervical, thoracic and lumbar back pain that is quite severe. She has had multiple injuries to her back starting in 1985 and has undergone extensive physical therapy as well as biofeedback therapy without relief. Mrs. Applebee also

14  -  OPINION AND ORDER

> has an ongoing heart condition for which she
> had a pacemaker placed after her heart
> stopped, although I am not aware that she has
> any residual problem now that this has been
> placed.  Her other medical problems that she
> has had in the past also at this point do not
> inhibit her in any way, but it is her current
> medical problems including her cervical,
> thoracic and lumbar back pain that are
> keeping her from employment.

Tr. 519.

**B.   The ALJ.**

The ALJ discredited Dr. Jensen's assessment of Plaintiff's
functional capacity based on the following:  (1) Dr. Jensen's
opinion is not supported by objective medical evidence,
(2) Dr. Jensen's opinion is inconsistent with her treatment
notes, and (3) Dr. Jensen's assessment is inconsistent with
Plaintiff's activities of daily living.  Tr. 20-21.

**C.   Analysis.**

As noted, Plaintiff contends the ALJ erred when she failed
to give controlling weight to Dr. Jensen's opinion and to provide
"clear and convincing" reasons for rejecting Dr. Jensen's
opinion.

An ALJ may reject a treating physician's opinion when it is
inconsistent with the opinions of other treating or examining
physicians if the ALJ makes "findings setting forth specific,
legitimate reasons for doing so that are based on substantial
evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028,

1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

### 1. Lack of Objective Findings.

As noted, the ALJ cited a lack of objective findings as a ground for not giving Dr. Jensen's opinion controlling weight. Tr. 21. The ALJ concluded the objective medical evidence in the record does not reflect Plaintiff has a debilitating impairment of her spine. Tr. 18, 20-21. Indeed, as the ALJ pointed out, Dr. Jensen noted that the many studies of Plaintiff's spine in the record do not show "any surgical problem." Tr. 519.

The record reflects Dr. Jensen coordinated care of Plaintiff's spine with Michael V. Hajjar, M.D., a neurological surgeon. *See, e.g.*, Tr. 511. In his effort to develop a

treatment plan for Plaintiff's back pain, Dr. Hajjar reviewed
several X-rays and CT scans of Plaintiff's spine and found them
to be "essentially normal," revealing some "subtle abnormalities,
but . . . not any definitive problems."   Tr. 508-14.
Nevertheless, Dr. Hajjar followed up with a myelogram CT of
Plaintiff's entire spine and noted his intent to "proceed with a
treatment plan" after that test.   Tr. 508.   On February 10, 2009,
a week before Dr. Jensen wrote her letter to Plaintiff's counsel,
Plaintiff underwent a myelogram CT of her cervical, thoracic, and
lumbar spine.   Tr. 498-502.   The test revealed very minimal
objective findings:  (1) Plaintiff's cervical spine did not
reveal any "evidence of acute fracture or subluxation.   There is
mild endplate degenerative change at C4-C5.   No central or
foraminal stenosis.   Small disk osteophyte complex at C5-C6
touches the ventral thecal sac.   The visualized airway is
unremarkable"; (2) Plaintiff's thoracic spine did not show any
"evidence of acute fracture or subluxation.   The visualized cord
is unremarkable. . . .   There is mild multilevel endplate
degenerative change without significant disk height loss or
central stenosis.   There is no foraminal narrowing"; and
(3) Plaintiff's lumbar spine revealed "lumbar vertebral bodies in
normal anatomic alignment.   There is a small disk bulge at L2-3.
There is mild bilateral L4-L5 foraminal narrowing.   There is
partial sacralization of the right L5.   No central stenosis.

17  -  OPINION AND ORDER

There is mild lower lumbar facet arthropathy." Tr. 500-01. The interpreting radiologist concluded Plaintiff's spine did not show any evidence of central or foraminal narrowing and only revealed mild degenerative changes of the mid-cervical, mid-thoracic, and lower-lumbar spine. Tr. 18, 501. There is not any evidence in the record that Dr. Hajjar followed up with Plaintiff to treat her back impairments or to develop any "treatment plan" after this myelogram CT scan. Dr. Jensen's treatment notes reflect Dr. Hajjar told Plaintiff he could not do anything to treat her impairments. Tr. 522.

In addition, at the hearing before the ALJ, the ME reviewed these objective medical findings and concluded they reflect normal degenerative changes and not the type of impairment that is disabling. Tr. 18, 66-68.

Although Plaintiff disputes the ALJ's characterization of the objective evidence and relies specifically on the findings of "disc bulges" at multiple levels in Plaintiff's back, the record supports the ALJ's interpretation of the objective findings as essentially normal or benign and the ALJ's conclusion that Dr. Jensen's opinion that Plaintiff does not have the functional capacity to perform even sedentary work due to her back impairments is not supported by objective findings.

### 2.    Inconsistentcy with Treatment Notes.

The ALJ also concluded Dr. Jensen's February 17, 2009,

opinion is inconsistent with her own treatment notes.  The ALJ
pointed out, for example, that Dr. Jensen's treatment notes from
February 17, 2009, reflect a lack of clinical findings to support
Plaintiff's claims of disabling pain.  Tr. 522-23.

Inconsistencies between a treating physician's opinions
and her treatment notes and observations has been held to be a
clear and convincing basis for rejecting a treating physician's
opinion.  *See Bayliss*, 427 F.3d at 1216.

Dr. Jensen's treatment notes from her two-year treating
relationship with Plaintiff reflect intermittent complaints of
back pain by Plaintiff and a less severe level of pain than
reported by Dr. Jensen in her opinion letter of February 17,
2009.  *See* Tr. 437-40, 445, 448-48, 519-27.  Indeed, when
Plaintiff established care with Dr. Jensen on February 6, 2007,
Dr. Jensen recorded Plaintiff's medical history and did not
include any complaint by Plaintiff of back pain or any impairment
of her spine despite Dr. Jensen's description of Plaintiff's back
impairment in her letter of February 17, 2009, as ongoing for 24
years.  Tr. 449.  On March 19, 2008, Plaintiff stated her back
pain does completely go away at times, which is contrary to
Dr. Jensen's conclusion that Plaintiff suffers from constant,
severe back pain.  Tr. 444.  Moreover, Plaintiff reported to
Dr. Jensen on June 27, 2008, that she had not been having any
back pain.  Tr. 439.  Significantly, on January 22, 2009, three

19  -  OPINION AND ORDER

weeks before Dr. Jensen opined Plaintiff's back pain was so severe that she could not perform even a sedentary job, Plaintiff reported to Dr. Jensen that Plaintiff believed could manage her pain with medication.  Tr. 524.  On February 17, 2009, the day she wrote the letter in support of Plaintiff's claim for disability based on severe back pain, Dr. Jensen noted Plaintiff was healthy and did not have any "midline thoracic vertebral tenderness present."  Tr. 522.  Otherwise, Dr. Jensen's treatment notes do not reflect any of Dr. Jensen's own observations about Plaintiff's particular functional limitations such as any inability to stand, to sit, to walk, to bend, etc.

### 3.    Plaintiff's Daily Activities.

The ALJ also discounted Dr. Jensen's opinion of the extent of Plaintiff's disability based on Plaintiff's activities of daily living.  The ALJ noted Dr. Jensen's treatment notes from February 17, 2009, reflect that Plaintiff can still brush and feed her horses despite no longer being able to ride them due to back pain.  Tr. 522.  Those notes also reflect Plaintiff's "belief" that she would "probably" be unable to work and that a sedentary job "would [not] be in her best interest."  Tr. 522.

The ALJ also relied on the observations of lay-witness David J. Applebee, Plaintiff's husband, who reported Plaintiff has the ability to care for a pet, to cook, to perform household chores, to shop for food and clothing once per week, to perform

outdoor chores such as feeding and watering livestock, and to drive an ATV despite no longer being able to ride horses or to get hay down from the barn for them.  Tr. 19-20, 159-66.

Considering the record as a whole, the Court finds the ALJ's bases for assigning little weight to Dr. Jensen's ultimate opinion that Plaintiff is disabled due to her back impairments are supported by substantial evidence in the record.  The Court, therefore, concludes the ALJ provided legally sufficient reasons supported by substantial evidence in the record for discrediting the opinion of Dr. Jensen as to Plaintiff's functional capacity.

## III. The ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony.

Plaintiff alleges the ALJ erred when he failed to give clear and convincing reasons for finding Plaintiff's subjective-symptom testimony not credible.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not

21  -  OPINION AND ORDER

any affirmative evidence of malingering, the ALJ can "reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Williamson v. Comm'r of Soc. Sec.*, No. 10-35730, 2011 WL 2421147 (9th Cir. June 17, 2011)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's credibility finding "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2.

The ALJ may rely on many factors when considering a claimant's credibility including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3)

the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). *See also* 20 C.F.R. § 404.1529(c). Although the ALJ may not solely rely on a lack of objective findings to reject a claimant's subjective-symptom testimony, "[o]bjective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled." 20 C.F.R. § 404.1529(c).

A. **Plaintiff's Testimony.**

Plaintiff testified she suffers from significant pain in her feet, back, neck, arms, hands, and chest. Tr. 55-63. Plaintiff attested she can walk only about 15 to 20 minutes before needing to stop and to rest due to pain, cannot drive for very long due to pain in her shoulder and back and an inability to hold her arms up without pain, can stand only five minutes due to pain in her legs and feet, cannot stand from a kneeling position, and can only work for a few hours a day and no more than two days a week. Tr. 62-66.

B. **ALJ.**

The ALJ found Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the claimant's

alleged symptoms.  However, [Plaintiff's] statements and
allegations concerning the intensity, persistence, and limiting
effects of these symptoms are not credible to the extent they are
inconsistent with the [RFC]."  Tr. 20.

The ALJ concluded Plaintiff's testimony concerning the
intensity and limiting effects of her impairments is undermined
by (1) the lack of objective medical evidence in the record,
(2) the fact that Plaintiff's increased self-reports of pain
coincide with her application for disability, (3) Plaintiff's
activities of daily living, and (4) Plaintiff's failure to follow
treatment.  Tr. 19-20.

**C.  Analysis.**

The Court has already reviewed the objective medical
evidence with respect to Plaintiff's back impairment.  Although
the ALJ did not conclude Plaintiff is without pain in her back,
the ALJ's conclusion that Plaintiff's claims of disabling pain in
her back are not consistent with the "normal" objective medical
findings is supported by the records of Dr. Hajjar and by the
opinion of the ME at the hearing before the ALJ.  As noted, this
cannot be the sole basis for rejecting Plaintiff's subjective-
symptom testimony, but the objective medical evidence must be
considered in determining the severity of a claimant's
impairments.  At a minimum, the examinations by Dr. Hajjar, which
include conclusions based on significant objective medical

testing of Plaintiff's spine, persuasively suggest Plaintiff's
impairments are not as severe as she attested.  *See Carmickle v.
Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir.
2008)("Contradiction with the medical record is a sufficient
basis for rejecting the claimant's subjective testimony.").

The ALJ also discredited Plaintiff's subjective symptom
testimony based on the apparent increase of reports of pain by
Plaintiff coincident to her disability application in July 2006.
For example, the ALJ refers to the treatment notes of
Dr. Marshall, the podiatrist who treated Plaintiff's foot
impairments during 2005 and 2006 during which time Plaintiff
underwent surgeries on her right foot.  *See* Tr. 282-309.

The records of Dr. Marshall, in fact, reflect a sudden
increase in Plaintiff's reports of severity of her foot pain
contemporary with her July 2006 application for disability
benefits.  Prior to her application, Plaintiff reported minimal
pain in her feet.  On July 29, 2005, Plaintiff reported to Dr.
Marshall that her feet were a "little painful, but they are
starting to feel better."  Tr. 305.  On August 12, 2005,
Plaintiff reported to Dr. Marshall that the injections he
administered "helped out a lot." Tr. 304.  On December 30, 2005,
two days after surgery on her right foot, Plaintiff reported
having only "a little pain," and four days later reported similar
and continued improvement.  Tr. 301-02.  On January 10, 2006,

25  -  OPINION AND ORDER

Plaintiff reported she had been up and walking on her foot and it had not been giving her "too much trouble at all." Tr. 300. On January 24, 2006, Plaintiff reported to Dr. Marshall that she had been "walking around on the foot just fine and she is getting very little pain." Tr. 297. Dr. Marshall discussed with Plaintiff the option to redirect one of the screws in her foot, but noted Plaintiff had not had any "pain in the area." Tr. 297. On February 7, 2006, Plaintiff reported "tenderness" in her right foot due to a slip and fall she suffered. Tr. 295. Dr. Marshall recommended Plaintiff stay off her foot for 3 weeks. Tr. 295. On February 28, 2006, plaintiff reported her foot was "doing better." Tr. 294. On March 24, 2006, Plaintiff reported her foot was doing "alright" and hurt only "when the storm comes through." Tr. 293. On May 9, 2006, Plaintiff reported the screw in her foot was "starting to get uncomfortable," particularly when wearing certain boots, and that she would like to have it removed. Tr. 291. On May 19, 2006, two days after the screw was removed, Plaintiff reported her foot was "doing wonderful, and she has not had any pain at all." Tr. 287. On May 30, 2006, Plaintiff reported much the same, stating that she had not had any pain since the surgery and that she was "doing very well." Tr. 286. Also in May 2006, Plaintiff reported to Scott Falley, M.D., another of her treating physicians, that she had continued to be "reasonably active." Tr. 334.

On July 25, 2006, one day before she applied for disability benefits, Plaintiff reported tenderness and throbbing in her foot after she had been "standing and walking on it for awhile." Tr. 285.  Dr. Marshall noted on that visit Plaintiff had normal sensation and range of motion in her foot.  Tr. 285.  On August 15, 2006, Dr. Marshall noted Plaintiff indicated she was applying for disability and related "she is still in a lot of pain with her feet."  Tr. 284.  Dr. Marshall, however, stated Plaintiff had not been using her bone stimulator as prescribed and instructed Plaintiff to wear arch supports.  Tr. 284.  Plaintiff again reported pain and cramping in her feet after standing or walking for an hour or more on August 25 and August 29, 2006.  Tr. 282-83.  These complaints of debilitating pain and difficulty walking are inconsistent with and in sharp contrast to the observations contained in Dr. Marshall's treatment notes from January through May 2006.

The record also does not reflect that Plaintiff sought any additional treatment with Dr. Marshall after August 29, 2006, despite complaints of increased pain and a decreasing ability to stand and to walk.  Of note, Plaintiff's medical records from her treatment with Dr. Falley in October, November, and December 2006 do not reflect any complaints of ongoing foot pain or the inability to stand or to walk.  Tr. 324-29.

The Court notes this pattern, though not conclusive of any

improper motive by Plaintiff, is similar to her complaints of back pain to Dr. Jensen as set out above.  As noted, Plaintiff presented to Dr. Jensen initially with no complaints of back pain and made only intermittent complaints of back pain for most of their relationship.  Then, the day that Dr. Jensen was to write a letter to Plaintiff's counsel in support of her disability application, Plaintiff presented "teary-eyed" with complaints of ongoing severe and disabling back pain during a discussion about Plaintiff's Social Security disability claim.  Tr. 519, 522.

In addition to these bases, the Court has already reviewed the record with respect to Plaintiff's activities of daily living and her failure to follow treatment for her right foot.  Both bases for the ALJ's credibility determination are supported by the record.

When considered in light of the record as a whole, the ALJ made her credibility determination based on clear and convincing reasons supported by substantial evidence in the record.  Accordingly, the Court concludes the ALJ provided legally sufficient reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms not credible.

## IV.  The ALJ did not reject the lay-witness statement of David Applebee.

Plaintiff also contends the ALJ erred by failing to provide legally sufficient reasons for rejecting the lay-witness

28  -  OPINION AND ORDER

statement of Plaintiff's husband, David Applebee.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members.").

The Court notes the ALJ did not, in fact, reject Applebee's testimony. The ALJ summarized and discussed Applebee's witness statement and found his observations of Plaintiff's daily activities to be "credible." Tr. 19. The ALJ, however, concluded that Applebee's description of Plaintiff's functional capacity was simply not inconsistent with the ALJ's determination that Plaintiff is capable of light work. As noted, Applebee stated Plaintiff was capable of performing most of the activities of daily living, with limits on the distance Plaintiff could walk, on her ability to get hay for their horses, and on her ability to ride her horse. Tr. 159-66.

Plaintiff objects to the ALJ's conclusion that Applebee's statement is not inconsistent with performing light work on the ground that Applebee's statements "do not demonstrate that Plaintiff has the capacity to sustain any of these [activities of

daily living] for the duration of even one eight-hour work day,
much less for the duration of five eight-hour workdays in a
week." This argument misses the point. The ALJ did not rely on
Applebee's statement alone as proof that Plaintiff can perform
her past relevant work, but merely concluded his statements did
not contradict the ALJ's conclusion, based on the whole record,
that Plaintiff is not disabled. Furthermore, it is Plaintiff's
burden to show she is not capable of sustaining work on a regular
and continuing basis, and the ALJ need not show that Applebee's
statement proves Plaintiff is capable of such. The ALJ,
therefore, did not err simply because Applebee's statements do
not alone prove Plaintiff is capable of light work.

Accordingly, the Court concludes the ALJ properly considered
Applebee's lay-witness statement.

**IV. The ALJ's hypothetical to the VE was complete.**

Finally, Plaintiff contends the ALJ's hypothetical to the VE
was inadequate because it did not contain all of Plaintiff's
work-related limitations. Having concluded the ALJ did not err
in his assessment of Plaintiff's foot impairments, Dr. Jensen's
opinion, Plaintiff's testimony, and Applebee's lay-witness
statements, the Court finds Plaintiff does not identify any basis
for the Court to conclude the ALJ's hypothetical to the VE was
erroneous.

In summary, the Court has reviewed the record *de novo* in its

entirety with respect to each of Plaintiff's contentions that the ALJ erred and concludes the ALJ has provided legally sufficient reasons for her decision that are supported by substantial evidence in the record.  Accordingly, the Court affirms the decision of the Commissioner.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 28th day of February, 2012.


_____
ANNA J. BROWN
United States District Judge

31  -  OPINION AND ORDER